**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | | |
|---|---|---|
| **ELLA D. VICK** | ) | |
| **2547 Markham Lane** | ) | |
| **Landover, MD 20785** | ) | |
| | ) | |
| **Plaintiff** | ) | **Case No. 14-2193** |
| | ) | **Jury Trial Demand** |
| **v.** | ) | |
| | ) | |
| **PATRICK R. DONAHOE** | ) | |
| **POSTMASTER GENERAL** | ) | |
| **U.S. POSTAL SERVICE** | ) | |
| **475 L'Enfant Plaza, NW** | ) | |
| **Washington, D.C. 20260** | ) | |
| | ) | |
| **Defendant** | ) | |

## COMPLAINT

Plaintiff Ella D. Vick, by and through counsel, hereby files this Complaint for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a, against Defendant Patrick R. Donahoe, Postmaster General, U.S. Postal Service.

## Jurisdiction and Venue

1.      This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e *et seq.,* 29 U.S.C. § 633a and 29 U.S.C. § 2601 *et seq.*

2.      Plaintiff has exhausted all administrative remedies prior to filing suit.

3.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district and Defendant may be found in this judicial district.

**Parties**

4.      Plaintiff Ella D. Vick (hereinafter "Plaintiff" or "Ms. Vick") is an African American female and was fifty-six (56) years old at the time of the events giving rise to this Complaint.

5.      Defendant Patrick R. Donahoe (hereinafter "Defendant," "USPS" or the "Agency") is the Postmaster General of the U.S. Postal Service, an administrative agency of the United States government, and an "employer" within the meaning of the statutes under which Plaintiff brings her claims.

**Factual Allegations**

6.      Plaintiff Ella D. Vick, is an African American female and former employee of the USPS, born in August 1956.  She began employment at the USPS on August 16, 1986 as a mail processor and was later promoted to Supervisor Distribution Operations in 1996. On May 30, 2008, Ms. Vick was promoted to Manager of Distribution Operations (MDO) at the Joseph Curseen, Jr. and Thomas Morris, Jr. Processing and Distribution Center (JCTM) in Washington, D.C.  The Plant Manager at the facility was Edgar Nathaniel Gramblin, Jr.  Ms. Wendy McIlwain, an African American female born in August 1962, was later promoted to Plant Manager at JCTM.

7.      As an MDO, Ms. Vick managed approximately eight supervisor employees. She was assigned to Tour 1 to work from 11 p.m. to 8 a.m., but worked long hours, 10 to 12 hours a day.  She was one of two MDOs on the Tour 1 shift. She worked on this shift with Lonzine Wright who was the junior MDO, but they occupied the same position, shared the same duties and managed the same personnel.  There was a total of four MDOs assigned to JCTM: Rosetta Watkins (DOB July 1943), who worked Tour 3; Ella

Vick (DOB August 1956), who worked Tour 1; Sherrod Stanard (DOB September 1966),

who worked Tour 2; and Lonzine Wright (DOB April 1968), who worked Tour 1.

8.      For several years, Ms. McIlwain and Mr. Stanard have allegedly been involved in

an intimate personal relationship.  Ms. McIlwain would allow Mr. Stanard to transfer to

different locations where she was assigned within the Capital Metro facilities.   Ms.

McIlwain allowed Mr. Stanard to work as the MDO on Tour 2, which was the least

difficult tour, with no timely dispatches. Ms. McIlwain gave him High Contributor

performance ratings, even though he performed fewer responsibilities than the other

MDOs.  On some days, they ate lunch together in his office.  Prior to her being promoted

to Plant Manager at JCTM, Ms. McIlwain was the MDO at JCTM on Tour 3 and directly

supervised her live-in male companion with whom she shared a residency, supervisor

Herman Lewis, who also worked Tour 3.  Ms. McIlwain became the Plant Manager at

JCTM in 2008 and continued to manage Herman Lewis.  Ms. McIlwain had a personal

vendetta against Ms. Vick because Herman Lewis was not promoted to Manager.  Ms.

McIlwain has a history of fraternization with her superiors as well as her subordinates.

9.      In May 2009, Ms. Vick received a General Notice of Reduction-in-Force (RIF)

from Capital Metro Area Operations. The notice stated that there may be a reduction of

the number of authorized positions within her competitive area at JCTM.  In June 2009,

Ms. Vick received a Specific Notice of Reduction-In-Force stating she would be released

from her MDO position and separated from the USPS effective August 28, 2009, and she

would have to apply for an MDO position.  On June 1, 2009, Ms. Vick applied for an

MDO position and was denied a position as an MDO by Ms. McIlwain.  Ms. McIlwain

selected the junior MDO, Lonzine Wright, who was 31 years old at the time to work Tour

1.   Ms. Vick requested FMLA due to stress because Ms. McIlwain was attacking, harassing, and threatening her on a daily basis, and issuing her disciplinary actions trying to remove her from her MDO position.  Ms. Vick filed an EEO complaint, Case No. IK-201-0014-09, against the USPS and later attended mediation with her counsel.  Ms. Vick prevailed, which resulted in her being awarded her MDO position on Tour 1.  Lonzine Wright was reassigned to a Customer Services Manager position to avoid being terminated from the Postal Service, but continued to serve as a Manager in Distribution Operations.  Ms. Vick was again placed under Ms. McIlwain's supervision on Tour 1, with the most responsibilities of all the MDOs. Ms. Vick also requested to be reassigned to Tour 2 since there was no MDO on Tour 2; Ms. McIlwain denied her request and told her there was no need for an MDO on Tour 2.  Months later Ms. McIlwain re-assigned Mr. Stanard to Tour 2, even though he was junior to Ms. Vick.

10.   USPS did not take any action against Ms. McIlwain as a result of this incident. After Ms. Vick remained in her MDO position, Ms. McIlwain began a barrage of personal attacks against Ms. Vick in an effort to retaliate to cause her termination from employment.

11.   After Ms. McIlwain was unsuccessful in her attempts in 2009 to RIF Ms. Vick, she made another attempt in 2010 to terminate Ms. Vick by announcing that she only needed three MDOs in Distribution Operations.  At the time, four individuals had been serving as MDOs.  Ms. McIlwain's decision meant that one individual serving as an MDO would lose their position.  Ms McIlwain announced that she wanted the three best qualified MDOs. Ms. Watkins, Ms. Vick, and Mr. Stanard held the official MDO positions.  Ms. Wright's official title of record was Customer Services Manager.  Ms.

McIlwain allowed her to work as a Manager in Distribution Operation, since she was the person who promoted Lonzine Wright in 2009.  To select the best MDOs, Ms. McIlwain informed Ms. Watkins, Ms. Vick, Mr. Stanard, and Ms. Wright that she and another individual would hold interviews for the MDO positions.  Prior to the interviews, Ms. Vick and Ms. Watkins learned that Ms. McIlwain had prepared a list of the interview questions with the answers and distributed the questions and answers to Ms. Wright and Mr. Stanard to ensure they would be selected, but not to Ms. Vick and Ms. Watkins.  Ms. Vick and Ms. Watkins were able to answer all questions at the interview, and as a result, Ms. McIlwain did not remove Ms. Watkins from her position.  However, at this time Ms. McIlwain was still trying to retaliate and terminate Ms. Vick, Ms. McIlwain did not place Ms. Vick back in her MDO position which was still vacant at the time.  Mr. Stanard and Ms. Wright were the junior MDOs selected by Ms. McIlwain.  Ms. Vick had to seek assistance from HR Manager Blanca Sanchez, who told Ms. McIlwain she had no choice but to place Ms. Vick back in her position.

12.     Ms. Vick was evaluated in her performance on an annual basis throughout her employment. She received favorable ratings, many accolades, and had accumulated an abundance of sick and annual leave.  The performance rating for the fiscal year period began on October 1 and ended September 30 each year.  As noted, Ms. Vick worked Tour 1 and was assigned to work from 11 p.m. to 8 a.m. In 2010, she worked on this shift with Lonzine Wright who was the junior MDO, they occupied the same position, shared the same duties and managed the same personnel. For the first five months of the rating period of FY 2011, Ms. McIlwain was assigned to the Suburban Facility in Maryland. She returned to the JCTM facility where Ms. Vick worked in February 2011. After a few

months, Ms. McIlwain started her barrage of attacks again to terminate Ms. Vick. The attacks became so severe that Ms. Vick went out on stress leave (FMLA) again because of Ms. McIlwain, from March through May 2011.   Ms. Vick contacted Plant Manager Edgar Nat Gramblin, Jr., who was assigned to Southern Maryland Plant, requesting a lateral transfer to the Southern Maryland facility. He denied her request.

13.     To complete the annual performance ratings of the employees Ms. Vick supervised, she would notify the employees that it was necessary to complete the rating, invite the employees to enter their accomplishments and remarks on their rating electronically, enter her own remarks and rating, have a one on one discussion and give the employee a copy of the evaluation for the employee to sign for his/her record.  This was the standard and proper protocol at JCTM.

14.     On October 6, 2011, Ms. Vick entered her end of year accomplishments and remarks on her own performance rating for Fiscal Year 2011.  Ms. McIlwain was Ms. Vick's supervisor and evaluator of record. Ms. McIlwain did not meet with Ms. Vick to discuss her performance rating, and Ms. Vick was not notified of her performance rating for FY 2011 at any time in 2011, or any time in FY 2012.   Ms. McIlwain also supervised Rosetta Watkins and did not meet with her to discuss her performance rating for FY 2011 at any time in 2011, or any time in FY 2012.

15.     In March 2012, Ms. Vick's mother, who was living in North Carolina, was diagnosed with lung cancer, and Ms. Vick requested and was granted FMLA.  As the cancer had progressed to Stage IV lung cancer and there was nothing else the doctors could do, Ms. Vick contacted Ms. McIlwain to request more time to care for her mother. Ms. Vick's request was denied.  Ms. Vick was instructed by Ms. McIlwain to return to

duty.  Her mother passed approximately a week later, and Ms. Vick was not there during her crucial time of need.  Upon Ms. Vicks' return to work Ms. McIlwain issued Ms. Vick a notice of a seven-day suspension for not performing work while she was on FMLA. Lonzine Wright was not on leave during the time, was the responsible Manager for the same function and was not given a seven-day suspension.  Ms. Vick, through her union representative Michael Fair, grieved the seven day Time Off Suspension to Mangala P. Gandhi, Manager, Area Human Resources.  Ms. Vick by-passed Senior Plant Manager Darryl Martin due to ensuring that the grievance would be handled fairly and without favor to Ms. McIlwain due to his personal friendship with Ms. McIlwain. On November 20, 2012, the Area Human Resources Manager reversed the seven-day suspension and rescinded it because Ms. Vick was on leave when the infraction occurred.

16.     On November 6, 2012, which was after the beginning of FY 2012, Ms. Vick received a General Notice of Reduction in Force, which advised her that she was in a position which potentially could be impacted by a re-organization.  Ms. Vick was told by USPS human resources manager, Phyllis Lingenfelser, that she had nothing to be concerned about because she had seniority.  Ms. Vick checked her personnel file in the Agency's Personnel Evaluating System in December 2012, and there was no performance rating for her for FY 2011 or FY 2012.

17.     Ms. McIlwain abolished Ms. Vick's MDO position, which resulted in Ms. Vick receiving a Specific Notice of Reduction in Force in January 2, 2013.   The notice informed Ms. Vick that she would be released from her MDO position and separated from the USPS effective March 8, 2013, and no placement could be made at that time because she was not selected to remain in her competitive level because she was issued a

Non-Contributor performance rating for FY 2011. Ms. Vick immediately protested the RIF notice to USPS human resources manager, Phyllis Lingenfelser, and advised her that she was not issued a performance rating in FY 2011, and had no knowledge of a Non-Contributor rating for FY 2011.  At this point, Ms. Vick was presented, for the first time, with a performance rating for FY 2011.  Rosetta Watkins was issued a Non-Contributor performance rating for FY 2011 and received that rating for the first time in January 2013, as well.

18.     Ms. Vick's FY 2011 performance rating includes Ms. Vick's remarks and accomplishments, and comments by Ms. McIlwain.  She indicated in the rating that "Tour 1 was not successful during this evaluation period."  The performance rating includes a section for the rating official to indicate if there was an End of Year Discussion and the Date and Comments.  In this section of the performance rating, there was the date of 11/01/11 as the date for the End of Year Discussion, and an entry of "No Comments Entered" in the section for comments by the rating official.  Ms. Vick was one of two MDOs on Tour 1.  The other MDO, Lonzine Wright, who was equally responsible for the performance of Tour 1, was issued a Contributor rating when Tour 1 was not successful.

19.     There were three MDOs assigned to Operations, and only two MDOs impacted by the RIF:  Rosetta Watkins (DOB July 1943) and Ella Vick (DOB August 1956).  Sherrod Stanard (DOB September 1966) was not impacted because of supposedly having veteran preference.  Lonzine Wright (DOB April 1968) was assigned to a Customer Service MDO position. Ms. Watkins and Ms. Vick were issued Non-Contributor performance ratings for FY 2011 by Ms. McIlwain and were no longer eligible for retention at their

competitive level.  Mr. Stanard was issued a High Contributor performance rating for FY 2011 for JCTM while being assigned to the Suburban Facility Annex.  Neither Stanard nor Wright, who were junior to Ms. Watkins and Ms. Vick, were issued notices that they would be released from their MDO positions.

20.      The MDO position held by Ms. Vick was abolished by Ms. McIlwain and re-posted from January 29, 2013 through February 13, 2013 for the Curseen-Morris facility in Washington, D.C., with a limited area of consideration for all qualified impacted EAS employees.   Interviews were held with non-impacted EAS employees.   The MDO position held by Ms. Watkins was not abolished or posted. There were only two MDOs impacted by the RIF, Ella Vick and Rosetta Watkins, who were the senior MDOs.  At the time Ms. Vick's position was posted, Ms. Vick was currently still in the MDO position. There has never been an instance where a person's job was posted when the person was still occupying the position.  Ms. Vick wanted to keep her MDO position, or be selected for other vacant MDO positions in the Capital Metro Area (JCTM, Suburban & Southern Maryland). Ms. Vick also made several requests to Plant Manager Edgar Nathaniel Gramblin, Jr., to be placed in any available MDO position. His reply was, "Why don't you just retire?"   Ms. Vick requested that she be placed in one of the other MDO positions as they had done for Ms. Wright and other EAS employees impacted by previous RIFs'.  Ms. Watkins was not interested in the MDO position, did not apply and was not assigned to that position.  In January 2013, Ms. Watkins was out of work on sick leave, and she remained on sick leave until August 2013, when she retired.  (Ms. Watkins' specific notice of reduction in force was rescinded on March 1, 2013.)

21.     Ms. Vick made several requests to human resources that she be placed in the MDO position that she occupied.  Ms. McIlwain, as the Acting Senior Plant Manager at the Southern Maryland facility, could place Ms. Vick in an MDO position, and had made placements of other EAS employees. USPS human resources manager, Phyllis Lingenfelser, informed Ms. Vick that Ms. McIlwain stated that under no circumstances would Ms. Vick be returned to an MDO position.

22.     After being told that she would not be selected for an MDO position, Ms. Vick was told by human resources manager Phyllis Lingenfelser that she had two choices: 1) be terminated on March 8, 2013; or 2) accept a lower level supervisor position.   In February 2013, Ms. Vick was told she had to make a decision and that the only positions available were two level 17 Supervisor positions, which were five grades below Ms. Vick's MDO level 22 position.

23.     On February 8, 2013, Ms. Vick submitted a request to human resources manager, Phyllis Lingenfelser to be placed in a lower level 17 supervisor position at CBF, Southern Maryland Facility in Capital Heights, Maryland.

24.     While Ms. Vick was working at the Southern Maryland Facility, the MDO position was still available.  Once again, Ms. Vick contacted human resources and asked that she be placed in the MDO position.  Ms. Vick was informed that Ms. McIlwain stated to HR Manager that she would not consider Ms. Vick for the MDO position at the Southern Maryland Facility or any other MDO positions. Ms. McIlwain was the Senior Plant Manager at the Southern Maryland Plant. As a result, Ms. Vick did not apply for the MDO position at the Southern Maryland facility because it would have been futile.

Jermaine Berrien (DOB December 1975), an individual Ms. Vick supervised prior years at the JCTM facility, was selected for the MDO position.

25.     After Ms. Vick accepted the position as Supervisor at the CBF Southern Maryland facility, Ms. McIlwain, against whom Ms. Vick had a pending EEO complaint, began a practice of showing up each evening on Ms. Vick's jobsite, harassing, threatening, and subjecting her to a hostile work environment about work assignments and supervising employees.  The harassment became so severe that Ms. Vick became emotionally distraught and was forced to retire from the Postal Service. Ms. Vick exhausted all administrative remedies before filing suit.

**Count I**
**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e *et seq.***
***Gender/Sex Discrimination***

26.     Plaintiff incorporates by reference paragraphs 1 through 25 as if fully stated herein.

27.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's gender/sex.

28.     At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

29.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

30.     In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq*., Defendant knowingly and intentionally subjected Plaintiff to discrimination by issuing a

Non-Contributor rating for FY 2011 that was not provided to Ms. Vick in 2011 or 2012, removing Ms. Vick from her MDO position, refusing to place her in available MDO positions, creating a hostile work environment, and harassing her, which led to her constructive discharge.  Ms. Vick was treated differently than younger male employees at the USPS who performed MDO duties.

31.     As a result of such acts, Plaintiff has suffered damages.

**Count II**
**Violation of Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e** *et seq.*
*Retaliation*

32.     Plaintiff incorporates by reference paragraphs 1 through 31 as if fully stated herein.

33.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because such individual filed a complaint of discrimination.

34.     At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

35.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

36.     In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.*, Defendant knowingly and intentionally subjected Plaintiff to retaliation and created a hostile work environment because she filed complaints of discrimination and successfully challenged a seven-day suspension in 2012, by issuing a Non-Contributor rating for FY

2011 that was not provided in 2011 or 2012, removing Ms. Vick from her MDO position and refusing to place her in available MDO positions, and creating a hostile work environment and harassing her, which led to her constructive discharge.

**Count III**
**Violation of the Age Discrimination in Employment Act**
**29 U.S.C. § 633a**
*Age Discrimination*

37.     Plaintiff incorporates by reference paragraphs 1 through 36 as if fully stated herein.

38.     The Age Discrimination in Employment Act, 29 U.S.C. § 633a, provides that, in executive agencies of the United States, all personnel actions affecting employees or applicants for employment who are at least 40 years of age shall be free from discrimination based on age.

39.     At all pertinent times, the Defendant was an employer subject to provisions of the Age Discrimination in Employment Act, 29 U.S.C. § 633a.

40.     At all pertinent times, Plaintiff was an employee entitled to protection under the Age Discrimination in Employment Act, 29 U.S.C. § 633a.

41.     In violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a, Defendant knowingly and intentionally subjected Plaintiff to discrimination and created a hostile work environment based on her age by issuing a Non-Contributor rating for FY 2011 that was not provided to Ms. Vick in 2011 or 2012, removing Ms. Vick from her MDO position and refusing to place her in available MDO positions, and creating a hostile work environment and harassing her, which led to her constructive discharge.  Ms. Vick was treated differently than younger employees at the USPS who performed MDO duties.

42.     As a result of such acts, Plaintiff has suffered damages.

**<u>Count IV</u>**
**Violation of the Family and Medical Leave Act (FMLA)**
**29 U.S.C. § 2601** *et seq.*

43.     Plaintiff incorporates by reference paragraphs 1 through 42 as if fully stated

herein.

44.     The Family and Medical Leave Act,  29 U.S.C. § 2601 *et seq.* and 29 C.F.R.

§ 825 *et seq.*, requires all employers, including public employers, of twenty or more

employees to provide up to twelve weeks of unpaid family leave for the birth of a child,

adoption or foster care or to care for a seriously ill family member and up to twelve

weeks of unpaid medical leave to recover from a serious illness rendering the employee

unable to work.

45.     At all pertinent times, Defendant USPS was an employer subject to provisions of

Family and  Medical Leave Act.

46.     At all pertinent times, Plaintiff Vick was an eligible employee entitled to invoke

her rights under the Family and Medical Leave Act.

47.     The Family and Medical Leave Act prohibits an employer from denying or

interfering with an employee's rights under this Act, and prohibits an employer from

discriminating against an employee because she requests FMLA leave or retaliating

against an employee because she takes FMLA leave.

48.     In violation of the FMLA, Defendant denied Plaintiff Vick her right to take up to

twelve weeks of leave under the FMLA, and thereby interfered with her rights under the

FMLA to care for her mother in 2012.  Ms. McIlwain thereafter issued Ms. Vick a seven-

day suspension in 2012 for not performing work while on FMLA.  After the seven-day

suspension was rescinded, McIlwain issued Ms. Vick a Non-Contributor rating for FY 2011 that was not provided to Ms. Vick in 2011 or 2012, removed Ms. Vick from her MDO position and refused to place her in available MDO positions, and created a hostile work environment and harassed her, which led to her constructive discharge.

49.    Defendant at all relevant times had actual and constructive knowledge of the conduct described above.

50.    Defendant had no legitimate business reason for any of such acts.

WHEREFORE, Plaintiff prays as follows:

A.    Issue a declaratory judgment that Defendant's practices toward Plaintiff were violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act, 29 U.S.C. § 633a.

B.    Enjoin Defendant from discriminating against employees who report discriminatory practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.;

C.    Award Plaintiff damages, including back pay and front pay, and all lost benefits, and compensatory damages for emotional distress and hardship created by the Defendant's discrimination and retaliation;

D.    Award payment of all fees, costs, expenses, including attorneys' fees and expert fees;

E.    That the court enter judgment against the Defendant, enter a declaratory judgment that Defendant violated Plaintiff's rights under the FMLA, 29 U.S.C. § 2601 *et seq.*, enjoin Defendant from further violations of the

FMLA, order Defendant to reinstate Plaintiff to employment in an MDO position;

F.    That the court award to Ms. Vick damages in an amount equal to all of her accumulated lost wages and benefits, including back pay, front pay and benefits; compensatory and liquidated damages for the financial and emotional harm caused by defendant, including prejudgment and post-judgment interest and any other damages permitted under the FMLA;

G.    That the court award Ms. Vick all benefits lost as a result of her termination from employment with the Defendant;

H.    That the court award payment of all fees, costs, expenses, including attorney's fees and expert fees; and

I.    That the Court award Ms. Vick such other relief as to which she may be deemed entitled.

Respectfully submitted,

David A. Branch #438764
Law Office of David A. Branch &
Associates, PLLC
1828 L Street, NW #820
Washington, DC 20036
202.785.2805
dablaw@erols.com

## Jury Trial Demand

Plaintiff demands a jury trial on all counts so triable.