UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELLA D. VICK, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 14-cv-2193 (TSC) |
| MEGAN J. BRENNAN, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Plaintiff Ella Vick alleges sex discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), age discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a (the "ADEA") and interference and retaliation under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (the "FMLA").

Plaintiff seeks a declaratory judgment that her rights were violated under Title VII, the FMLA, and the ADEA and she seeks to enjoin Defendant Megan Brennan from discriminating against other employees under Title VII and from violating the FMLA. (ECF No. 1 ("Compl.") ¶¶ 50(A), 50(B), 50(E).) She also seeks compensatory damages, back and front pay, lost benefits, reinstatement into her position, and court fees, costs, and expenses. (*Id.* ¶¶ 50(C), 50(E)–(H).)

By Memorandum Opinion and Order dated March 28, 2016, this court denied Defendant's motion to dismiss, or in the alternative, for summary judgment. (ECF No. 11 ("Mem. Op.") at 12.) By order dated June 1, 2016, the court then referred the parties to Magistrate Judge Harvey for mediation, but attempts to settle this case were unsuccessful. (ECF

1

No. 18.) Defendant has now moved for summary judgment. (ECF No. 29 ("Def. MSJ").) For the reasons stated below, the motion will be DENIED.

## I. FACTUAL BACKGROUND

In 2011, Plaintiff worked as a Manager of Distribution Operations ("MDO") at the Joseph Curseen-Thomas Morris facility ("JCTM") of the United States Postal Service ("USPS"). (ECF No. 31-2 ("Stmnt. Mat. Facts") ¶¶ 1, 5.) Plaintiff's supervisor was Wendy McLlwain, who worked as a Plant Manager and supervised three other MDOS: Sherrod Stanard, Lonzine Wright, and Rosetta Watkins. (ECF No. 31-1, Ex. B ("McLlwain Dep.") 10:7–16; Stmnt. Mat. Facts ¶ 5.)

### A. Performance Evaluations

Although the performance evaluation process was not explicitly explained in the Statement of Material Facts, the court is able to glean that the four MDOs were evaluated at the end of each fiscal year. During the evaluation process, the MDO would provide a self-evaluation and the supervisor would rate the MDO's performance on a scale which ranged from Non-Contributor (unsatisfactory work performance) to Exceptional Contributor (above satisfactory work performance). Per the FY 2011 performance evaluations in the record, McLlwain recommended the following ratings: (1) Stanard - Contributor, (2) Wright - Contributor, (3) Watkins - Non-Contributor, and (4) Plaintiff - Non-Contributor. (ECF No. 31-1, Ex. F; Ex. H, ROI 134–37, 150–54.)

The parties dispute the timing and validity of Plaintiff's FY 2011 performance evaluation. Defendant directs the court to McLlwain's declaration and testimony that she notified Plaintiff of her Non-Contributor performance rating on November 1, 2011 and subsequently entered

2

Plaintiff's evaluation in 2011. (Stmnt. Mat. Facts ¶ 2.) Plaintiff points to evidence suggesting that McLlwain did not enter the performance rating until December 2012. (*Id.*) She also claims that Stanard received his Contributor ratings in FY 2011 because McLlwain was involved in an intimate personal relationship with him and favored him over Plaintiff during performance reviews. (*Id.* ¶ 10.)

B. **Vick's FMLA leave**

In March 2012, Plaintiff requested FMLA leave to care for her mother in North Carolina. (ECF No. 31 ("Pl. Opp. MSJ.") at 7; ECF No. 31, Ex. C at 57–60.) McLlwain granted Plaintiff's request for an undetermined period of FMLA leave on April 12, 2012. (ECF No. 31, Ex. C at 61.) While Plaintiff was on leave, she and McLlwain had weekly conversations about Plaintiff's family situation. (ECF No. 5, Ex. 8 ¶ 7.)

On May 16, 2012, McLlwain sent Plaintiff a Return to Duty/Letter of Intent ("Letter of Intent") stating that she had an "unsubstantiated absence of duty since March 15, 2012," and would be considered absent without leave and subject to disciplinary action if she did not report to work or provide additional medical documentation justifying her absence. (ECF No. 31, Ex. A, at 8–9.) Despite the fact that Plaintiff was already on FMLA, the Letter of Intent invited her to apply for FMLA leave, stating "I have also included Family Medical Leave (FMLA) Form WH-380, if you feel your absence may be covered under FMLA." (*Id.* at P9.)

Defendant alleges that McLlwain sent the Letter of Intent only because Plaintiff had not told McLlwain when she would be coming back to work. (ECF No. 29 ("Def. MSJ") at 27.) Plaintiff alleges, however, that she contacted McLlwain and requested an extension of her leave while still on leave, and that McLlwain denied her request. (*See* Pl. Opp. MSJ at 14 (citing ECF No. 8-2, Ex. C ("Decl. Ella Vick June 29, 2015") ¶ 10.)) It is unclear when Plaintiff returned to

work. (Pl. Opp. MSJ at 7.) Plaintiff's mother passed away "approximately a week" after Plaintiff returned to work, and Plaintiff took a period of bereavement leave, which does not appear to have been authorized under FMLA. (*Id.*)

On July 20, 2012, McLlwain issued Plaintiff a Letter of Warning in Lieu of 7-day Time-Off Suspension ("Letter of Warning") for work infractions occurring between June 15–July 13, 2012, while she was on bereavement leave. Plaintiff filed a grievance with her union representative protesting the Letter of Warning (ECF No. 31-1, Ex. B, P241), which was later rescinded by the USPS Area Manager for Human Resources, who concluded that Vick was on leave during the time that the infractions allegedly occurred. (ECF No. 31-1, Ex. A at P14.)

### C. Reduction in Force Letters

In late 2012, at the beginning of FY 2013, USPS headquarters notified employees, via a general reduction in force ("RIF") letter, that it was seeking to reduce workload and staffing by better aligning staffing levels with projected mail volume. (ECF No. 31-1, Ex. A at P13.) The letter further advised that affected employees would receive an additional, specific RIF letter. (*Id.*)

On January 2, 2013, Plaintiff received a specific RIF letter stating that she would be released from her position and terminated from the USPS effective March 8, 2013. (ECF. No. 31-2 ("Pl. Resp. Und. Facts") at ¶ 7.) Watkins also received a specific RIF letter indicating that she would be terminated on March 8, 2013, while the other two MDOs, Wright and Stanard, did not receive specific RIF letters. (*Id.* at ¶¶ 5, 8.)

There are two main disputes regarding the specific RIF letters. First, the parties disagree on whether Plaintiff's specific RIF letter was warranted. Defendant claims that Plaintiff and Watkins received RIF notice letters because they had received Non-Contributor performance

4

ratings for FY 2011. (*Id.* ¶ 11.) Plaintiff claims that, at least in her case, Defendant did not comply with the RIF rules. (*Id.*) Second, the parties disagree on why Stanard did not receive a specific RIF letter. Defendant contends that Stanard's veteran preference status exempted him from the RIF (*id.* ¶¶ 5, 10), while Plaintiff maintains that according to his official Form 50, Stanard did not have veteran preference status (*id.* ¶ 10).

### D. New Position

On January 29, 2013, USPS posted an MDO position at JCTM, where Plaintiff was working at the time. (*Id.* ¶ 12.) On February 8, 2013, Plaintiff accepted placement in a Level 17 Supervisor position at different facility, the Capital Beltway Facility. This position was five grades below her previous Level 22 MDO position. (*Id.* ¶¶ 9, 12.) The circumstances surrounding these events are also in dispute. Defendant claims Plaintiff requested the downgrade and accepted it, and therefore Watkins, the only eligible employee, was offered the MDO position. (*Id.* ¶¶ 12, 15.)

Plaintiff testified that, after receiving her specific RIF letter, she met with Human Resources Manager Phyllis Lingenfelser and requested reinstatement to the newly posted MDO position at JCTM. (*Id.* ¶ 12.) Lingenfelser told her that she could not be reinstated because she had received a Non-Contributor performance rating in 2011. (*Id.* ¶ 9.) Plaintiff also claims that Lingenfelser told her that McLlwain would not select her for a future MDO position "under any circumstances," so she accepted the downgrade because she felt it was her only alternative to termination. (*Id.* ¶¶ 9, 12.)

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no disputed genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A dispute of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "material" only when it involves facts "that might affect the outcome of the suit under the governing law." *Id.* In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotations omitted). In response, the nonmoving party must "go beyond the pleadings" and identify specific facts showing a genuine issue for trial. *Id.* at 324. To defeat summary judgment, the nonmovant must "provide evidence that would permit a reasonable jury to find [in his favor]." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (citations omitted).

In evaluating a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The court must "eschew making credibility determinations" at the summary judgment stage. *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2017). However, "[i]f the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).
"[C]onclusory assertions offered without any evidentiary support do not establish a genuine issue for trial." *Wang v. Wash. Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 63 (D.D.C. 2016) (citing *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999)).

## III.    ANALYSIS

### A. <u>Discrimination Claims Pursuant to Title VII (Count I) & ADEA (Count III)</u>

Defendant moves for summary judgment on Plaintiff's discrimination claims. Count I alleges gender and sex discrimination in violation of Title VII, and Count III alleges age discrimination in violation of the ADEA. (Compl. ¶¶ 26–31, 31–42.) In suits under both Title VII and the ADEA, courts apply the *McDonnell-Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–5 (1973); *Cuddy v. Carmen*, 694 F.2d 853, 856–857 (D.C. Cir. 1982). Under this framework, if the plaintiff establishes a prima facie case of discrimination, then the defendant must articulate a legitimate, non-discriminatory reason for its actions. If the defendant does so, the burden reverts to the plaintiff to demonstrate that the defendant's reasons are "mere pretext" for discrimination. *McDonnell-Douglas*, 411 U.S. at 802–05.

To establish a prima facie case of discrimination under Title VII, a plaintiff must establish that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the adverse action gives rise to an inference of discrimination. *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002). Here, Defendant concedes that Plaintiff has satisfied the first two requirements. (Def. MSJ at 9.) Thus, the only issue is whether Plaintiff's loss of her

7

MDO position under the RIF process gives rise to an inference of discrimination based on her age, gender, or sex.

Defendant mounts three challenges to such an inference. First, it contends that Plaintiff cannot show that she was similarly situated to other employees because her Non-Contributor rating placed her in a less favorable position. (Def. MSJ at 10.) Second, Defendant argues that Plaintiff cannot establish age discrimination because her younger comparators had higher performance ratings. (*Id.* at 11–12.) Third, Defendant contends that Plaintiff has failed to rebut Defendant's proffered legitimate non-discriminatory reason (Plaintiff's Non-Contributor rating) for the RIF. (*Id.* at 16–18.)

The common denominator in these challenges is Plaintiff's Non-Contributor rating. And each challenge fails for the same reason: Plaintiff has adduced evidence from which a reasonable jury could find that McLlwain belatedly produced a pretextual FY 2011 evaluation in an attempt to cause Plaintiff to lose her MDO position during an otherwise legitimate RIF.

For example, Plaintiff claims that she only learned about her FY 2011 Non-Contributor rating after receiving her specific RIF notice letter in January 2013. She denies that she had a phone call or conversation with McLlwain about her performance rating before that time and testified that she checked her employee file in November 2012, and it contained no FY 2011 or FY 2012 performance reviews. (*See* ECF No. 31-1, Ex. A, ("Decl. Ella Vick Mar. 20, 2014") ¶¶ 7, 9.) It is also relevant, though not conclusive, that on January 2, 2013, the same day that Plaintiff received her specific RIF notice, she filed a grievance with her union representative protesting her Non-Contributor rating. (ECF No. 31-1, Ex. E) ("MDO Vick received a non-contributed [sic] rating in 2011 EOY, and it was never told or explained to her about the rating or offer her an opportunity to file a [sic] E Recourse, whereby the time limits has [sic] expired.")

8

Plaintiff's assertion is also supported by her colleague Watkins' testimony that she also did not receive a performance rating in FY 2011 and was not notified of her FY 2011 performance rating until January 2013. (ECF No. 8-2, Opp. MTD/SJ, Ex. B P158, ¶¶ 4, 5.) Watkins testified that had she received the Non-Contributor rating before January 2013, she would have filed a grievance protesting the rating. (*Id.* ¶ 4.)

Evidence in the record also indicates that McLlwain did not issue employee performance reviews in 2012, and using FY 2011 performance reviews to issue RIF notices in FY 2013 was contrary to USPS RIF rules, which require using employees' "last annual performance rating." (Stmnt. Mat. Facts ¶ 11 (citing ECF No. 31-1, Ex. H, ROI 180).)

Plaintiff has also proffered evidence that fellow MDO Wright, who held the same position as Plaintiff and worked the same shift ("Tour 1") with near-identical duties, received a Contributor rating for FY 2011 despite receiving negative comments similar to those Plaintiff received about her Tour 1 performance. (*See* ECF No. 31-1, ROI 136; ECF No. 29-4 ("McLlwain Decl.") Ex. 5; Pl. Opp. MSJ at 24.)

Defendant, for its part, repeatedly cites to McLlwain's declarations asserting that she notified Plaintiff of her Non-Contributor rating in November 2011. (Stmnt. Mat. Facts ¶ 2.) But further examination reveals that these declarations are unclear on the issue. In McLlwain's first three declarations, she states that she told Plaintiff over the phone about her Non-Contributor rating on Nov. 1, 2011. (*See* ECF No. 8, Def's. MTD/SJ Ex. 6 ¶ 2; Pl's MTD/SJ Ex. 8 ¶7; Def's. MTD/SJ Ex. 7 ¶ 2.) But in her July 29, 2015 declaration, she states that she spoke with Plaintiff in person about her rating during a shift between 10:00 PM on Nov. 1 and 6:00 AM on Nov. 2. (ECF No. 29-4, Def's. MSJ ¶ 2–3.) And in McLlwain's March 24, 2017 deposition, she testified that on the morning of Nov. 1, 2011, she had a phone call with Plaintiff during which she shared

9

her year-end comments on Plaintiff's performance, although she did not indicate whether she told Plaintiff about her Non-Contributor rating.  (ECF No. 29-1 at 72–76.)

Taken together, there is evidence in the record to create a genuine issue of material fact regarding the timing and veracity of Plaintiff's FY 2011 performance review.  Accordingly, because each of Defendant's challenges is tethered to Plaintiff's FY 2011 performance review, the court will DENY Defendant's motion for summary judgment on Plaintiff's Title VII and ADEA discrimination claims.

### B. Retaliation Claims Pursuant to Title VII (Count II) & ADEA

"Title VII's anti-retaliation provision makes it unlawful for an employer 'to discriminate against [an] employee [ ] . . . because [s]he has opposed any practice' made unlawful by Title VII or 'has made a charge, testified, assisted, or participated in' a Title VII proceeding."  42 U.S.C. § 2000e-3(a); *Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008).  Retaliation claims are also evaluated under the *McDonnell-Douglas* burden-shifting framework.  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).  ADEA retaliation claims parallel Title VII retaliation claims.  *See Passer v. Am. Chem. Soc.*, 935 F.2d 322, 330 (D.C. Cir. 1991) ("This provision [of the ADEA] is parallel to the anti-retaliation provision contained in Title VII of the Civil Rights Act of 1964 . . . and cases interpreting the latter provision are frequently relied upon in interpreting the former.") (citations omitted); *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).

To establish a prima facie case for retaliation, a plaintiff must establish "that (1) she engaged in statutorily protected activity; (2) her employer took an adverse personnel action against her; and (3) a causal connection exists between the two."  *Carney v. American Univ.*, 151

F.3d 1090, 1095 (D.C. Cir. 1998) (citing *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985); *Paquin v. Fed. Nat. Mortg. Ass'n*, 119 F.3d 23, 31 (D.C. Cir. 1997).

Defendant presents three challenges to Plaintiff's Title VII and ADEA retaliation claims. One can be dispatched summarily: Defendant contends that Plaintiff has not rebutted its proffered legitimate non-discriminatory reason (the Non-Contributor rating) for the RIF. (Def. MSJ at 16–18.) As discussed above, this argument fails because Plaintiff has adduced evidence from which a reasonable jury could find that McLlwain belatedly produced a sham FY 2011 evaluation outside JCTM's standard protocol in order to justify including Plaintiff in the RIF.

Defendant also argues that USPS Headquarters decided to include Plaintiff in the RIF and that Plaintiff has failed to adduce any evidence that the RIF notice was initiated or even influenced by McLlwain or Lingenfelser. (*Id.* at 13–14.) In response, Plaintiff points to her allegation that McLlwain created a sham FY 2011 performance evaluation to manipulate an otherwise legitimate RIF, and cites *Thompson v. District of Columbia*, 530 F.3d 914 (D.C. Cir. 2008) in support.

Plaintiff has the better of this argument. In *Thompson*, a supervisor reassigned an employee to a position designated for elimination due to an agency-wide reduction in force. *Thompson*, 530 F.3d at 916. The D.C. Circuit held that the employee was "constructively removed" from his job at the time of his transfer into the "doomed" position, not at the time of the otherwise legitimate RIF. *Id.* at 919. As in *Thompson*, the action Plaintiff challenges is not the legitimate agency-wide RIF, but McLlwain's manipulation of the RIF and the evaluation process to constructively demote her. (Pl. Opp. MSJ at 20.)

Defendant's final argument is that Plaintiff cannot establish a prima facie case of retaliation because she cannot prove causation through temporal proximity, noting that there was

11

a three-year gap between when Plaintiff's Equal Employment Opportunity ("EEO") complaint closed in November 2009 and when her specific RIF notice was issued in January 2013. (Def. MSJ at 14–15.)

Plaintiff responds that Defendant incorrectly identifies the 2009 EEO complaint as the statutorily protected activity and clarifies that it was the union grievance she filed after she received the Letter of Warning from McLlwain. (Pl. Opp. MSJ at 32–33.) But a union grievance alone cannot constitute "protected activity." *See Robbins v. District of Columbia*, 67 F. Supp. 3d 141, 146 (D.D.C. 2014), *aff'd*, 650 F. App'x 37 (D.C. Cir. 2016) (collecting cases holding that union grievances do not qualify as protected activity unless they allege unlawful practices). Thus, the last date of Plaintiff's protected activity was November 5, 2009, when her EEO complaint was closed.

Plaintiff argues that even without temporal proximity, she can establish a causal connection because McLlwain engaged in a continuous "pattern of antagonism" since Plaintiff's 2009 EEO complaint, including harassment, "frequent" disciplinary actions, three attempts to terminate her, and refusal to give her an MDO position. (Pl. Opp. MSJ at 31–32.) To show causation between protected activity and an adverse employment action in the context of Title VII retaliation, a plaintiff must proffer facts "adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001); *see also University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013) ("[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.") "It is well established that evidence of a pattern of antagonism following closely on the heels of protected activity and related to the

12

challenged employment action may establish the causation element of a Title VII plaintiff's prima facie case." *Allen v. Johnson*, 795 F.3d 34, 46 (D.C. Cir. 2015).

Plaintiff has proffered evidence that McLlwain engaged in multiple hostile acts against her between 2010 and 2013, when Plaintiff filed her second EEO complaint. (Decl. Ella Vick Mar. 20, 2014 ¶¶ 3–10.) A reasonable jury could find that these acts amounted to a "pattern of antagonism" in retaliation for Plaintiff's earlier EEO activity. *Taylor v. Solis*, 571 F.3d 1313, 1323 (D.C. Cir. 2009). The court therefore finds that Plaintiff has established a prima facie case for retaliation under Title VII, and as discussed above, there are issues of material fact regarding whether Defendant's proffered reason for the RIF action is "mere pretext" for discrimination. Accordingly, the court will DENY Defendant's motion for summary judgment on Plaintiff's retaliation claims under Title VII and the ADEA.

### C. <u>Violation of the Family and Medical Leave Act (Count IV)</u>

#### 1. <u>Statute of Limitations</u>

A plaintiff may bring an action under the FMLA up to two years after the last event of the alleged violation. *See* 29 U.S.C. § 2617(c)(1)(2008). A three-year statute of limitations applies, however, when a plaintiff alleges a willful violation of the statute. *See* 29 U.S.C. § 2617(c)(2). "In the context of the FMLA, willful conduct is generally viewed as 'an employer that knows its conduct to be wrong or has shown reckless disregard for the matter in light of the statute.'" *Hodge v. United Airlines*, 666 F. Supp. 2d 14, 23 (D.D.C. 2009) (quoting *Sampson v. Citibank, F.S.B.*, 53 F. Supp. 2d 13, 19 (D.D.C. 1999)).

Defendant argues the facts do not show a willful violation of the FMLA because McLlwain allowed Plaintiff to take FMLA leave, did not discipline her for her performance while she was on FMLA leave, and did not discipline her for using FMLA leave. (Def. MSJ at

13

25.) Plaintiff contends that the record "raises an inference that Ms. McLlwain's denial of Ms. Vick's FMLA constitutes willful conduct." (Pl. Opp. MSJ at 14.) Specifically, she argues that when McLlwain issued her a Letter of Intent after approving her FMLA leave and discussing her mother's illness with her on the phone, McLlwain intentionally attempted to interfere with her use of her approved FMLA leave. (*Id.* at 14–15.) Plaintiff further alleges that she contacted McLlwain and requested additional leave while still on FMLA leave, and that McLlwain denied her request. (*See* Pl. Opp. MSJ at 14 (citing Decl. Ella Vick June 29, 2015 ¶ 10.))

In its 2016 Memorandum Opinion, this court held that Plaintiff had successfully pleaded a willful violation of the FMLA, relying on three alleged facts: a) that Plaintiff requested additional FMLA leave from McLlwain, and that her request was denied; b) that McLlwain issued Plaintiff the Letter of Intent ordering her to return to work when she had already granted Plaintiff FMLA leave; and c) that McLlwain issued Plaintiff the Letter of Warning for work infractions while she was on FMLA leave. (Mem. Op. at 19.)

Viewing the facts in the light most favorable to Plaintiff, the court again finds that she has established a genuine issue of material fact as to whether Defendant willfully violated the FMLA by interfering with her right to take the full amount of her authorized FMLA leave. Accordingly, the court will DENY Defendant's motion for summary judgment on statute of limitations grounds as to Plaintiff's FMLA claims.

2. FMLA Merits

"An employer may be held liable for violating the FMLA under two distinct claims: (1) interference, if the employer restrained, denied, or interfered with the employee's FMLA rights, and (2) retaliation, if the employer took adverse action against the employee because the employee took leave or otherwise engaged in activity protected by the Act." *Holloway v. D.C.*

*Gov't*, 9 F. Supp. 3d 1, 7 (D.D.C. 2013) (citing *Deloatch v. Harris Teeter, Inc.*, 797 F. Supp. 2d 48, 64 (D.D.C. 2011); *Price v. Washington Hosp. Ctr.*, 321 F. Supp. 2d 38, 45-46 (D.D.C. 2004)).

### *i. Interference*

Defendant argues that it did not interfere with Plaintiff's FMLA rights; that McLlwain approved Plaintiff's FMLA leave, and the Letter of Intent was merely an "inquiry letter." (ECF No. 36 ("Def. Reply Mem.") at 4.) Plaintiff proffers the same facts in support of her FMLA interference claim that she proffers to show that Defendant's FMLA violation was willful. As with Defendant's statute of limitations argument, the court finds there is a disputed issue of material fact regarding whether Defendant interfered with Plaintiff's right to FMLA leave, and therefore will DENY Defendant's motion for summary judgment on Plaintiff's FMLA interference claim.

### *ii. Retaliation*

Plaintiff argues that McLlwain retaliated against her for using FMLA leave; first, by issuing her a disciplinary Letter of Warning on July 20, 2012 (Pl. Opp. MSJ at 16–17), and second, by constructively removing her from her position and demoting her through the RIF process. (*Id.* at 17.) Plaintiff's first argument is unpersuasive because the Letter of Warning was issued while she was on bereavement leave, and Plaintiff has not established that her bereavement leave was authorized under the FMLA. (*See* Decl. Ella Vick Mar. 20, 2014 at ¶ 8.) Any discipline that Plaintiff received for conduct while on non-FMLA leave cannot support a claim of retaliation for her use of FMLA leave.

Plaintiff's second argument, that the constructive removal was retaliation for her taking FMLA leave, fares better. Defendant argues that Plaintiff's Non-Contributor rating (the basis for

15

the removal) cannot constitute retaliation because it occurred before she requested FMLA leave. But, as noted above, the parties dispute the timing of the Non-Contributor rating, and Plaintiff has proffered evidence that the rating was given after her FMLA leave. Accordingly, the court will DENY Defendant's motion for summary judgment on Plaintiff's FMLA retaliation claim.

### D. Hostile Work Environment

Counts I, II, III, and IV allege that Defendant created a hostile work environment and constructively discharged Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the ADEA, 29 U.S.C. § 633a. "Courts apply the same analysis when evaluating a hostile work environment claim under Title VII and the ADEA." *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 82 (D.D.C. 2015) (citing *Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 162 n.9 (D.D.C. 2014)). To establish a hostile work environment claim under either statute, a plaintiff must offer evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

A plaintiff alleging a hostile work environment must show that: (i) she is a member of a protected class; (ii) she was subjected to unwelcome harassment; (iii) the harassment occurred because of her protected status; (iv) the harassment affected a term, condition or privilege of employment; and (v) the employer knew or should have known of the harassment but nonetheless failed to either take steps to prevent it or take prompt remedial action. *See*, *e.g.*, *Baloch v. Norton*, 355 F. Supp. 2d 246, 259 (D.D.C. 2005); *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 120 (D.D.C. 2004). "To establish constructive discharge claims under Title VII, a plaintiff must show not only that her working environment was hostile, but also that it 'became

16

so intolerable that her resignation qualified as a fitting response.'" *Sewell v. Hugler*, No. 08-5079, 2009 WL 585660, at *1 (D.C. Cir. Feb. 25, 2009) (quoting *Schafer*, 535 F.3d at 695).

In its 2016 Memorandum Opinion, this court found that Plaintiff had adequately pleaded that she was subject to a hostile work environment under Title VII and the ADEA. (Mem. Op. at 21.) It found that Plaintiff's allegations that McLlwain had subjected her to workplace harassment and threats "on a fairly regular basis" from 2009–2013, provided an interview "cheat sheet" to Plaintiff's colleagues during an MDO interview process in 2010, and included a sham FY 2011 performance review in her personnel file amounted to allegations of "severe and unfair conduct" which could unreasonably interfere with Plaintiff's work performance. (*Id.* at 21–23.)

Despite this ruling, Defendant argues in its most recent motion for summary judgment that Plaintiff has only put forth "conclusory allegations" that McLlwain attacked and harassed her, arguing that Plaintiff has not produced "any evidence of conduct so frequent, severe, offensive, or intense" required to establish a hostile work environment claim. (Def. MSJ at 21). Defendant further denies that it issued Plaintiff a Letter of Warning for performance issues while she was on bereavement leave, included a sham FY 2011 performance review in Plaintiff's personnel file, and denied her request for additional FMLA leave. (*Id.* at 27, 28.)

Plaintiff relies on the facts described above in the 2016 Memorandum Opinion and argues that, viewed in totality, McLlwain's actions during the time she was Plaintiff's supervisor gave rise to a hostile work environment. (Pl. Opp. MSJ at 34.)

The court's 2016 Memorandum Opinion made clear that the record presents several issues of material fact about whether McLlwain created a sham FY 2011 performance review, prevented Plaintiff from retaining her MDO position, or interfered with Plaintiff's use of her approved FMLA leave. Plaintiff has adduced facts to support her Title VII, ADEA, and FMLA

17

claims which, if true, could be sufficiently severe and pervasive to constitute a hostile work environment.

Defendant belatedly mounts several arguments disputing Plaintiff's claim of constructive discharge in its Reply. (Def. Reply at 2.) While it did not raise these arguments in its opening motion, thereby depriving Plaintiff the opportunity to rebut them, the court will consider them here. First, Defendant notes, as it did in its motion to dismiss, that Plaintiff raised the constructive discharge claim for the first time in District Court. (*Id.* n.1.) Defendants appear to overlook the court's holding in its 2016 Memorandum Opinion that "Plaintiff's EEO Complaint sufficed to put Defendant on notice of her claim of constructive discharge." (Mem. Op. at 17.)

Defendant's argument that Plaintiff's support for her harassment claims consist of "conclusory assertion[s] unsupported by the record" is also belied by the evidence in the record. (Def. Reply at 3). Plaintiff testified and presented evidence that after forcing her demotion from the MDO position, McLlwain "began a practice" of harassing her at her new location. (Decl. Ella Vick Mar. 20, 2014 at ¶ 20; ECF No. 31-1, Ex. B ("Ebony Mills Aff.") at P166.)

Defendant finally argues that Plaintiff's constructive discharge claim fails because there is no evidence showing that "Defendant [USPS] knowingly permitted conditions of discrimination so intolerable that a reasonable person would have been forced to resign." (Def. Reply at 3-4 (citing *Spangle v. Valley Forge Sewer Authority*, 839 F.2d 171, 173 (3d. Cir. 1988).) Defendant's citation to an outdated Third Circuit formulation of constructive discharge does nothing to advance its argument. This court will abide by the D.C. Circuit's constructive discharge jurisprudence, under which a plaintiff may prevail on a constructive discharge claim if an employer "creates or 'tolerates discriminatory working conditions that would drive a reasonable person to resign.'" *Katradis v. Dav-El of Washington, D.C.*, 846 F.2d 1482, 1485

18

(D.C. Cir. 1988) (quoting *Hopkins v. Price Waterhouse*, 825 F.2d 458, 472 (D.C. Cir.1987). The facts that Plaintiff has proffered to support her other claims also show a pattern of conduct which a jury could find amounts to a hostile work environment. Therefore, the court will DENY Defendant's motion for summary judgment on Plaintiff's hostile work environment claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion will be DENIED. An appropriate Order accompanies this Memorandum Opinion.

Date: April 6, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge